UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CONTINENTAL EQUIPMENT          )
CO., INC., et al.,             )
                               )
        Plaintiffs,            )
                               )
    vs.                        )        Case No. 4:06CV1270 CDP
                               )
GREYSTONE, INC.,               )
                               )
        Defendant.             )

## MEMORANDUM AND ORDER

This business dispute arises out of the sale and collapse of two materials

"stackers."  Plaintiff Continental Equipment Co. is a distributor of heavy

construction equipment, and was an authorized dealer of equipment, including the

stackers here, manufactured and sold by defendant Greystone, Inc.  Lafarge North

America is a customer of Continental, and owns a quarry in Defiance, Missouri,

and a plant in St. Charles, Missouri.

In 2004, Continental ordered components for two Mast Radial Stackers[1]

from Greystone and sold them to Lafarge for more than $200,000.  Continental

hired Cook's Fabrication and Welding to install the stackers at Lafarge's Defiance

quarry and at its St. Charles plant.  After installation the Defiance stacker

_____

[1]Stackers are a type of conveyor intended to move rocks and gravel from one location to
another, where the materials are then "stacked."

collapsed twice, and the St. Charles stacker collapsed three times. This lawsuit followed, and the parties have now filed a wealth of dispositive motions.

Continental and Lafarge sued Greystone for breach of the implied warranties of merchantability and fitness for a particular purpose, breach of express warranty, negligent misrepresentation, negligence, and strict liability. Greystone counterclaimed against Continental for unpaid amounts due for the sale of the stackers and for breach of contract. Greystone brought counterclaims against both Continental and Lafarge for negligence, unjust enrichment, contribution, and indemnification. Greystone also named Cook's as an additional counterclaim defendant, seeking contribution and indemnification.

Greystone's summary judgment motion asserts that Continental's and Lafarge's non-warranty claims are precluded by the exclusive warranty provision of the dealer agreement, which limits remedies to repair or replacement of defective or nonconforming parts. Greystone also argues that the negligence and strict liability claims are barred by the economic loss doctrine, and that the undisputed evidence shows it performed all its warranty obligations. Continental and Lafarge argue that Greystone cannot enforce or rely on any provisions of the contract because Greystone is not a licensed engineer in the State of Missouri. Lafarge also argues that it was not a party to the contract between Continental and

Greystone, so the Greystone warranties or limitations cannot be enforced against it, and in any event, the limitations are unconscionable and would cause the warranty to fail of its essential purpose. Finally, Cook's seeks summary judgment against Greystone, claiming Missouri law does not allow a contribution or indemnification claim against it.

I conclude that Greystone's counterclaims and defenses are not precluded by the Missouri statute relating to licensed engineers, and that factual disputes remain on all other issues. I will therefore deny all the pending motions.

## Standards Governing Summary Judgment

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine

issue of material fact exists.  Fed. R. Civ. P. 56(e).  At the summary judgment

stage, I will not weigh the evidence and decide the truth of the matter, but rather I

need only determine if there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at

249.  Under these standards, I review the facts[2] of this case.

## <u>Undisputed Facts</u>

Greystone manufactures and sells sand washing and classifying equipment

and conveyor systems.  One type of conveyor system manufactured by Greystone

is the Mast Radial Stacker system.  Mast Radial Stacker systems are generally

used in rock quarries to move crushed rock from one location to another.  The

stackers consist of a system of pulleys and cables that suspend a conveyor from a

mast.  The conveyor can be moved horizontally and vertically so that it can be

adjusted to place rock evenly to form rock piles.

The Mast Radial Stackers involved in this case were designed by Greystone

based upon a design of an earlier, 200 foot, Mast Radial Stacker, which Greystone

manufactured in 1997 or 1998.  The parties refer to the earlier version as the

California stacker.  The California stacker was designed for Greystone by Marvin

Ehresman, a professional engineer, who provided his design drawings for the

---

[2]I recite these facts for purposes of this motion only.   This Memorandum and Order
cannot be used at trial to relieve any party of its obligation to prove all facts necessary to
maintain any claim or defense.

California stacker to Greystone and affixed his professional engineering seal on the drawings. Greystone modified these design drawings to design the Mast Radial Stackers that it actually sold in this case. The drawings for these stackers were not sealed by a professional engineer, and Greystone employs no professional engineers. Greystone has never been registered with the Missouri Division of Professional Registration and has not obtained a Certificate of Authority to offer and provide engineering services under Mo. Rev. Stat. § 327.401.

Since 1997, Greystone has manufactured thirteen Mast Radial Stackers, including the St. Charles and the Defiance stackers. Of the thirteen, six have collapsed. Greystone has not manufactured any Mast Radial Stackers since it manufactured the two at issue in this case.

On May 17, 2002, Continental and Greystone entered into a Dealer Sales & Service Agreement. Under the terms of the agreement, Greystone appointed Continental a dealer of various Greystone equipment and replacement parts. The section entitled "Duties" states that "Greystone on its part agrees to supply you with reasonable quantities of product literature free of charge; provide application engineering assistance; prompt quoting and other support as may be deemed reasonable and necessary by Greystone."

Schedule B of the Dealer Agreement states that sales by Greystone to Continental and Continental's customers are subject to certain terms and conditions. All product shipments from Greystone are F.O.B., shipping point, with title passing to Continental (or Continental's customers if shipped directly to the customer) at the time the product is delivered to the carrier. Paragraph 2 of Schedule B contains warranty terms and limitations of remedies:

**WARRANTY AND REMEDIES**: GreyStone hereby warrants that unless otherwise specified on the face of this document that the products furnished under a purchase order for such product(s) is new, original drawings, samples and other written description set out or referenced in an accepted purchase order, shall be free from defects in material or workmanship; and GreyStone has title to the products(s). Such warranty shall survive inspection, delivery, acceptance and payment for a period of 180 days from the date of deliver [sic]. THE WARRANTIES SET FORTH IN THIS AGREEMENT ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF [sic] WHETHER STATUTORY, EXPRESS OR IMPLIED AND THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES ARISING FROM A COURSE OF DEALING OR USAGE TRADE AND HEREBY EXCLUDED.

The warranty shall not apply if the equipment or material have been (i) altered, repaired or modified except by GreyStone or GreyStone's authorized personnel, (ii) subject to misuse, damaged, or installed or operated in a manner other than as recommended in the GreyStone Installation and Operating Instruction Manual or (iii) used in a manner or with accessories not recommended by GreyStone.

. . .

GREYSTONE'S OBLIGATION UNDER ANY

PROPOSAL/AGREEMENT OR PURCHASE ORDER IS LIMITED SOLELY AND EXCLUSIVELY TO REPAIR AND REPLACEMENT OF DEFECTIVE OR NONCONFORMING PARTS REPORTED IN WRITING WITHIN THE WARRANTY PERIOD.  GREYSTONE, AND ANY AFFILIATED COMPANY, SHALL NOT BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES ARISING DIRECTLY OR INDIRECTLY FROM POSSESSION OF THE PRODUCT(S), WHETHER FOUNDED ON CONTRACT, TORT OR ANY OTHER THEORY OF LAW, NOR FOR ANY DAMAGES THAT MAY BE CAUSED BY A DELAY IN DELIVERY.  The repair or replacement of product by GreyStone will be at no charge to you, F.O.B. destination, but is conditioned upon the receipt of written notice of any alleged defect or non-conformance promptly upon discovery.  No product shall be returned to GreyStone without its prior written consent.

To assist in this program, GreyStone provides a warranty registration card that is to be completed and returned within thirty (30) days of installation by you or your customer.  The equipment or part on which a warranty claim is made must be returned to GreyStone's facility, freight prepaid.  If a claim is allowed, then the freight cost will be credited to your or your customer as appropriate.

(emphasis in original).

On January 26, 2004, Continental agreed to purchase, and Greystone agreed to sell, a 42" x 175" Mast Radial Stacker (the St. Charles stacker) and a 42" x 150" Mast Radial Stacker (the Defiance stacker).  The sale was F.O.B. Greystone's plant in Columbus, Nebraska.

Continental resold the Greystone stackers to Lafarge on April 13, 2004. The contract between Continental and Lafarge states that the "Standard

Manufactures Warranty" would apply to the sale. Before the sale, Greystone had no contact with Lafarge concerning the sale, and Greystone made no representations to Lafarge concerning the products other than those contained in the limited warranty.

Between April 22, 2004 and May 4, 2004, Greystone shipped the component parts of the St. Charles stacker from its plant in Columbus, Nebraska to Lafarge's St. Charles plant. On May 6, 2004, Greystone shipped the equipment manual for the St. Charles stacker to Continental. The limited warranty and warranty registration form were contained in the manual. Shortly thereafter, Continental gave the manual to Lafarge. The warranty in the equipment manual states that it shall "survive inspection, delivery, acceptance and payment for a period of 180 days from the date of delivery" and further provides in relevant part as follows:

> THE WARRANTIES SET FORTH IN THIS AGREEMENT ARE
> EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES
> WHETHER STATUTORY, EXPRESS OR IMPLIED; AND THE
> WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A
> PARTICULAR PURPOSE AND ALL OTHER WARRANTIES
> ARISING FROM A COURSE OF DEALING OR USAGE OF
> TRADE ARE HEREBY EXCLUDED.
> . . .
>
> GREYSTONE'S OBLIGATION UNDER ANY PURCHASE
> ORDER IS LIMITED SOLELY AND EXCLUSIVELY TO REPAIR

AND REPLACEMENT OF DEFECTIVE OR NONCONFORMING
PARTS REPORTED IN WRITING WITHIN THE WARRANTY
PERIOD.  THE COMPANY SHALL NOT BE LIABLE FOR
CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGE
ARISING DIRECTLY OR INDIRECTLY FROM POSSESSION OF
THE PRODUCT(S), WHETHER FOUNDED ON CONTRACT,
TORT OR ANY OTHER THEORY OF LAW, NOR FOR ANY
DAMAGES THAT MAY BE CAUSED BY A DELAY IN
DELIVERY.

(emphasis in original).

Cook's, as Continental's subcontractor, assembled and erected the St.
Charles stacker.  On July 22, 2004, it collapsed.  Between July 22 and August 4
Greystone shipped replacement parts to Lafarge's St. Charles plant.  Only the
component parts that were believed to be damaged were replaced.  Continental,
through Cook's, used the replacement parts to repair the St. Charles stacker.
However, it collapsed again on August 5, 2004, while being raised following
repair.  On October 5, 2004, Greystone shipped replacement parts for the entire St.
Charles stacker to Lafarge's St. Charles plant, and Cook's then reinstalled it using
those replacement parts.  About one year later, on October 18, 2005, the St.
Charles stacker collapsed for the third time.  After the last collapse neither
Continental nor Lafarge sought replacement parts from Greystone.

By November 5, 2004, Greystone shipped components of the Defiance
stacker to Lafarge's Defiance plant so that Continental, again through its

subcontractor Cook's, could assemble and erect the stacker. Lafarge had already received a copy of the equipment manual with warranty terms, because it had received it for the St. Charles plant. In any event, on November 5, 2004, Greystone delivered the equipment manual with warranty information for the Defiance stacker to Continental, and Continental provided the manual to Lafarge shortly thereafter. The warranty language was the same as that for the St. Charles stacker.

The Defiance stacker collapsed on June 8, 2005, more than 180 days after it was delivered. On August 10, 2005, Greystone shipped replacement parts to Lafarge's Defiance plant, which were then installed by Cook's. The Defiance stacker has continued to operate and remains in operation today.

Discussion

Before turning to Greystone's motion for summary judgment, I must first decide whether Greystone is precluded from relying on the limitations of remedies contained in the warranties. Continental and Lafarge argue that Greystone cannot enforce the limitations – or anything else in the contracts – because it is not a licensed engineer in Missouri.[3] Continental and Lafarge argue that the Missouri

---

[3]This argument appears in motions to dismiss and/or strike filed by Continental and Lafarge, in their briefs in opposition to Greystone's motion for summary judgment, and in support of their motions for summary judgment on Greystone's counterclaims.

statute prohibiting unauthorized practice of engineering precludes Greystone's claims:

> Every contract for architectural or engineering or land surveying services entered into by any person who is not an architect or professional engineer or professional land surveyor, as the case may be, and who is not exempt from the provisions of this chapter, shall be unenforceable by the unlicensed or unauthorized person, whether in contract, quantum meruit or other legal theory, regardless of whether a benefit has been conferred.

Mo. Rev. Stat. § 327.461. Continental and Lafarge contend that the statute bars Greystone from relying on any part of the contract or bringing any other action because it did not employ a professionally licensed engineer to design the Greystone stackers.

Continental and Lafarge argue that this case involves a "contract for . . . engineering . . . services" because the Dealer Agreement states that "Greystone on its part agrees to . . . provide application engineering assistance." They also point out that the original Mast Radial Stacker (the California Stacker) was manufactured according to the design drawings of a professionally licensed engineer who affixed his professional engineering seal on the drawings. Greystone modified these design drawings to design the Lafarge stackers, but it did not use a professionally licensed engineer to do so.

I agree with Greystone that even if it entered into a contract to provide

engineering services,[4] it is not precluded from enforcing the contract provisions under Missouri law. Mo. Rev. Stat. § 327.191(3) exempts "any person engaged in engineering who is a full-time, regular employee of a person engaged in manufacturing operations and which engineering so performed by such person relates to the manufacture, sale or installation of the products of such person" from the licensing requirements of Mo. Rev. Stat. § 327.181. Because § 327.461 only applies to those "who [are] not exempt from the provisions of this chapter," if Greystone qualifies for the manufacturing exemption then it is not precluded from enforcing its contracts (and the limitations on remedies contained in them) under Missouri law.

It is undisputed that Greystone manufactures the construction equipment it sells (and licenses others to sell), and that it manufactured the components for the

---

[4]Greystone disputes this point, of course, and I do not need to decide it at this time. Missouri law describes the type of services that constitute engineering services as follows:

> Any person practices in Missouri as a professional engineer who renders or offers to render . . . any service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as . . . investigation, evaluation, . . . and design of engineering works and systems . . . in connection with any . . . machines, equipment . . . or projects.

Mo. Rev. Stat. § 327.181.

Greystone stackers.[5]  The statute does not define "relates."  In the absence of statutory definitions, I must turn to the ordinary meaning of the statutory terms as derived from a dictionary and consider the context of the statute in which the language appears.  Missouri ex rel. Burns v. Whittington, 219 S.W.3d 224, 225 (Mo. 2007) (en banc).  Merriam-Webster's Collegiate Dictionary defines "relates" as "to have [a] relationship or connection."  Merriam-Webster's Collegiate Dictionary 984 (10th ed. 2007); see City of Jefferson City, Missouri v. Cingular Wireless, LLC, 531 F.3d 595 (8th Cir. 2008) (approving of the use of Merriam-Webster's Collegiate Dictionary to define Missouri statutory terms).

Even if Greystone provided engineering services in this case, there is no dispute that those services "relate to" the manufacture, sale, and installation of the Greystone stackers.  Continental and Lafarge argue that Greystone provided engineering services because it modified the design of the California stacker according to their specifications to manufacture the Greystone stackers.  No other engineering services are at issue.  Under the plain language of the statute, these services relate to – ie., have a relationship or connection to – the manufacture, sale, or installation of the Greystone stackers.  Because Greystone is exempt under

_____

[5]The Greystone stackers were manufactured by Greystone at its 40,000 square foot manufacturing plant in Nebraska.  The plant employs about 50 people, including the full-time regular employees who prepared the drawings for the Greystone stackers.

§ 327.191(3), then section 327.461 does not apply and does not prevent Greystone

from enforcing the contracts at issue in this case.[6]

Continental and Lafarge argue that the manufactured product exemption

only applies to "a mass-marketed product like an IPOD or Ford motor vehicle."

They also attempt to avoid the exemption by calling the Greystone stackers

"unique" and emphasizing that only thirteen have been manufactured by

Greystone.[7]  The statute, however, does not require the product to be mass-

produced or mass-marketed for the exemption to apply.  Continental and Lafarge

attempt to support this argument by relying on a case from the Southern Division

of the Missouri Court of Appeals, Far East Services Corp. v. Tracker Marine,

LLC, 246 S.W.3d 486 (Mo. Ct. App. 2007).  In that case, the court rejected a

defendant's attempt to apply the manufactured product exemption to the sale of

boat parts.  The court held that the exemption did not apply because "there is no

evidence in record that [defendant] engaged in manufacturing operations.  It

simply took orders and then contracted out the manufacture of the goods to an

entity that was engaged in manufacturing operations."  Id. at 512.  Far East is

---

[6]For this reason, even if Greystone's president testified that Greystone agreed to provide not only the Greystone stackers, "but also engineering, design, and services" for the stackers, Greystone can still claim the manufactured product exemption.

[7]Continental and Lafarge also point out that "the sale of mast radial stackers has only accounted for approximately 1% of Greystone's gross revenues over the last 10 years."

easily distinguishable from the case at bar because there is no dispute that Greystone manufactured the Greystone stackers and other construction equipment that it sells.

The court also stated that the manufactured product exemption did not apply because "there is no evidence in the record to support that the services were provided incidental to the sale of manufactured goods as contemplated by this statute." Id. This dicta does not support Continental and Lafarge's argument that the exemption only applies to mass-marketed or produced products. To the extent that the state court was merely restating the statute's requirement that the engineering services "relate to" the sale or manufacture of the product, then it is consistent with the statutory language and my ruling here. However, neither I nor a state appellate court can contravene legislative intent by engrafting a mass-marketing or mass-production requirement onto the plain language of the statute. "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." Missouri ex rel. Young v. Wood, 254 S.W.3d 871, 872-73 (Mo. 2008) (en banc). "When the statute's language is unambiguous, a court must give effect to the legislature's chosen language." Id. at 873. "'A court may not add words by implication to a statute that is clear and unambiguous.'" Id. (quoting Asbury v. Lombardi, 846 S.W.2d 196, 202 n.9 (Mo.

banc. 1993)). The standard for determining whether a statute's terms are plain and clear is whether the terms are plain and clear to a person of ordinary intelligence. Wolff Shoe Co. v. Director of Revenue, 762 S.W.2d 29, 31 (Mo. 1988) (en banc). In the absence of ambiguity the plain language of the statute controls, and any attempt to read something more into it amounts to judicial legerdemain. See Hinnah v. Director of Revenue, 77 S.W.3d 616, 620 (Mo. banc 2002) (holding that courts "are without authority to read into a statute legislative intent contrary to intent made evident by plain language.").

The statute means what it says, and because any engineering services Greystone may have rendered in this case relate to the manufacture, sale or installation of the Greystone stackers, Greystone was not required to comply with Mo. Rev. Stat. § 327.181. For this reason, Greystone is not precluded by Mo. Rev. Stat. § 327.461 from enforcing the Dealer Agreement and sales contracts for the Greystone stackers.[8] The motions to strike, to dismiss, and for summary judgment filed by Continental and Lafarge will be denied.

---

[8]Space Planners Architects, Inc. v. Frontier Town-Missouri, Inc., 107 S.W.3d 398 (Mo. Ct. App. 2003), relied upon by Continental and Lafarge, is inapposite. That case did not even deal with the manufactured product exemption, but instead with pleading requirements in state court to enforce statutory liens. Equally unavailing is Kansas City Community Center v. Heritage Industries, Inc., 972 F.2d 185 (8th Cir. 1992), which dealt with parties who were not exempt from the requirements of § 327.181. The Blaske v. Smith & Entzeroth, Inc., 821 S.W.2d 822 (Mo. 1991), case, cited by Lafarge, is completely irrelevant as it deals with a state statute of repose, not the statutes at issue here.

I now turn to Greystone's motion for summary judgment against Continental and Lafarge. After careful review of the entire record in light of the relevant standards, I find that numerous disputes of material fact preclude entry of summary judgment in favor of Greystone. Whether Greystone can enforce the liability limitations and whether it complied with its duty under the warranty are hotly contested factual disputes at the crux of this case that cannot be decided as a matter of law. Resolution of these key issues will require the decision-maker to make numerous factual findings and credibility determinations, which I cannot do at this stage of the proceedings. The same is true for the negligence and strict liability claims. For these reasons, Greystone's motion for summary judgment must be denied.

Cook's motion for summary judgment must also be denied. As with Greystone's motion, there are numerous factual disputes surrounding the manufacture, installation, collapse, and repair of the Greystone stackers. These factual issues are at the crux of Greystone's claims against Cook's and preclude entry of judgment as a matter of law in favor of Cook's on Greystone's claims against it.

Accordingly,

**IT IS HEREBY ORDERED** that the various motions to dismiss, to strike,

and for summary judgment [#61, 68, 70, 71, 72, 73] are denied.

**IT IS FURTHER ORDERED** that this case is expected to be reached first on the trial docket beginning **Monday, September 22, 2008**, and the parties are reminded that their pretrial submissions are due **Tuesday, September 2, 2008**. Because of scheduling conflicts, we will not hold trial on Thursday, September 25, Friday, September 26, or Tuesday, September 30, so the parties should schedule their witnesses accordingly. I expect, however, to cover a great deal of evidence in the first three days of trial, in part because I expect to resolve any disputes over evidence at the final pretrial conference. The final pretrial conference will be held on **Tuesday, September 16, 2008 at 12:30 in Courtroom 14 South**, and will be on the record. In advance of the conference I expect counsel to stipulate to the admissibility of exhibits and to many of the underlying facts of the case, such as dates of delivery, etc. I will also rule on any motions in limine and other objections to evidence at that time.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of August, 2008.